UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARMELA S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | CASE NO. C19-6044-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1995.[1] She has a high school diploma and some college

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

education, and has not worked for any extended periods of time. (AR 48, 56.)

Plaintiff applied for SSI in April 2016. (AR 230-35.) That application was denied and Plaintiff timely requested a hearing. (AR 146-49, 156-62, 169-71.)

On May 1, 2018, ALJ Allen G. Erickson held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 38-102.) On September 19, 2018, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-28.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on September 5, 2019 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had worked since the alleged onset date, but that this work did not rise to the level of substantial gainful activity. (AR 17.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's pseudoseizures, major depressive disorder, bipolar disorder, anxiety disorder, and personality disorder. (AR 17-18.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 18-19.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing a full range of work at all exertional levels, with the following non-exertional limitations: she cannot climb ladders, ropes, or scaffolds, or perform commercial driving. She cannot be exposed to workplace hazards, such as open water, open flame, or open machinery. She can understand, remember, and apply short, simple instructions, and perform routine, predictable tasks while not in a fast-paced, production-type environment. She can make simple decisions, can be exposed to only occasional workplace changes, and have occasional interaction with the general public. (AR 19-20.)

Plaintiff has no past relevant work (AR 26), so the ALJ proceeded to step five, where the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of transitioning to other representative occupations, such as hospital cleaner, hand packager, and cleaner II. (AR 27.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing certain medical opinions. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 3

Medical opinions

Plaintiff challenges the ALJ's assessment of the State agency psychological opinions, as well as the opinion of examining psychologist Daniel Pratt, Psy.D.  The Court will address each disputed opinion in turn.

Legal standards

Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician.  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).  An ALJ may reasonably decline to adopt the opinion of a physician "offered as a recommendation, not an imperative." *Carmickle*, 533 F.3d at 1165.  But where a medical opinion is inconsistent with the ALJ's RFC assessment, the ALJ must explain why the opinion was not credited.  *See* Social Security Ruling 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

State agency opinions

A State agency psychological consultant opined on initial review that Plaintiff would "work best with few coworkers" and "would have difficulty maintaining a work schedule and would have occasional disruption in concentration due to mood symptoms."  (AR 124-25.)  On reconsideration, a State agency psychological consultant affirmed the prior consultant's opinion that Plaintiff would work best with few coworkers, and also indicated that Plaintiff "would have

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 4

some difficulty maintaining a work schedule, but is capable of maintaining adequate [concentration, persistence, and pace] and attendance required for unskilled and semiskilled work and would have some disruption in concentration due to mood symptoms. [C]urrent limitations do not preclude [her] working, in a job [she] liked." (AR 141.) The ALJ gave "some weight" to the State agency opinions, but did not mention the opinions that Plaintiff would work best with few coworkers, or the concentration and attendance deficits the consultants described. (AR 26.)

The consultants' opinions that Plaintiff would "do best" with few coworkers is not stated in the form of a requirement, and thus does not address Plaintiff's RFC, which is "the most" a claimant can do. *See* 20 C.F.R. § 416.945(a)(1). Because the State agency consultants opined that Plaintiff would "do best" with few coworkers, but not that she could only work in an environment with few coworkers, the ALJ did not err in failing to include such a limitation. *See, e.g.*, *Mendoza v. Berryhill*, 2019 WL 1259434, at *5 (E.D. Cal. Mar. 19, 2019) ("While Dr. Amado identified the "best" setting for Plaintiff, there was no indication that such a setting was the most that Plaintiff could tolerate or that it was a necessary functional limitation. Thus, the ALJ was not required to adopt this portion of Dr. Amado's opinion offered as a recommendation."); *Fox v. Berryhill*, 2017 WL 3197215, at *4-5 (C.D. Cal. Jul. 27, 2017) (finding that the ALJ did not err in failing to address portion of medical opinion where physician stated that plaintiff would "do best" in a low stress job with no public contact, because that portion addressed a preference rather than a requirement).

As to the opinions regarding Plaintiff's concentration and attendance deficits, the Commissioner argues that the ALJ's RFC assessment accounts for Plaintiff's limitations in those areas by restricting Plaintiff to jobs involving short, simple instructions, with routine, predictable tasks, that were not in a fast-paced, production-type environment. Dkt. 11 at 5. Indeed, the ALJ explicitly explained that he limited Plaintiff to unskilled work without a production pace in light

of the distraction she experiences from her mood abnormalities, as well as her slow motor function at times. (AR 26.)

Although Plaintiff argues that the ALJ did not adequately link these restrictions to the portion of the State agency opinions wherein they mentioned Plaintiff's concentration and attendance problems caused by mood problems (Dkt. 12 at 7-8), she does not acknowledge that the ALJ did expressly indicate that the mental restrictions in the RFC were intended to account for Plaintiff's limitations caused by her mood abnormalities. The Court finds that the ALJ's assessment of the State agency opinions adequately explains how he accounted for those opinions: by including limitations consistent with the opinions. *See Turner*, 613 F.3d at 1223 (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

Accordingly, the Court finds no error in the ALJ's assessment of the State agency opinions and affirms that portion of the ALJ's decision.

<u>Dr. Pratt's opinion</u>

Dr. Pratt examined Plaintiff in February 2018 without reviewing records, and completed a DSHS form opinion describing her symptoms and limitations. (AR 1682-86.) Subsequently, Phyllis Sanchez, Ph.D., reviewed Dr. Pratt's opinion for DSHS as well as a prior opinion from 2016 that was not provided to Dr. Pratt, and opined that Plaintiff was primarily impaired due to substance abuse. (AR 1688-89.) Dr. Sanchez opined that Plaintiff's impairments would persist even with 60 days of sobriety, suggesting that Plaintiff's "drug use may contribute but whether this is the cause is not clear." (AR 1688.) Dr. Sanchez further found that the "cognitive item ratings" provided by Dr. Pratt "have no support given the narrative and [mental status

examination]." (*Id.*)

The ALJ summarized Dr. Pratt's opinion and went on to find that "Dr. Sanchez reviewed Dr. Pratt's opinion for the housing authority and concluded that the ratings had no support, given the claimant's examination.  Dr. Sanchez also indicated that the claimant's primary impairment at the time was substance abuse and her symptoms would improve without it ([AR 1688])."  (AR 25.)  The ALJ gave little weight to Dr. Pratt's opinion, and some weight to Dr. Sanchez's opinion, finding the marked and severe limitations described by Dr. Pratt to be inconsistent with Plaintiff's examination, activities of daily living, and the evidence as a whole.  (AR 25-26.)  Plaintiff challenges both the ALJ's interpretation of Dr. Sanchez's assessment of Dr. Pratt's opinion, as well as the inconsistencies cited by the ALJ as the basis for discounting Dr. Pratt's opinion, and the Court will consider each in turn.

Dr. Sanchez

First, Plaintiff argues that the ALJ overstated Dr. Sanchez's disagreement with Dr. Pratt's opinion, noting that Dr. Sanchez found only that Dr. Pratt's *cognitive* ratings were unsupported, but expressed no opinion regarding the other ratings. Dkt. 12 at 3.  Indeed, the ALJ's summary of Dr. Sanchez's opinion does not accurately reflect the scope of Dr. Sanchez's disagreement with Dr. Pratt's ratings, but the ALJ provided his own reasons to discount the marked and severe ratings that Dr. Pratt provided, namely their inconsistency with other evidence in the record.  (AR 25.)  Thus, it is not clear that the ALJ's inaccurate description of Dr. Sanchez's opinion regarding Dr. Pratt's ratings reflects prejudicial error as to the ALJ's assessment of Dr. Pratt's opinion.

Plaintiff also argues that the ALJ erred in stating that Dr. Sanchez found that Plaintiff's primary impairment was substance abuse and that her symptoms would improve with sobriety. Dkt. 12 at 4.  Dr. Sanchez checked the box "Yes" to the question: "Based on available medical

evidence, is the individual primarily impaired due to substance abuse or chemical dependency?" (AR 1688.) The Court finds that the ALJ did not misrepresent this portion of Dr. Sanchez's opinion. (*See* AR 25 ("Dr. Sanchez also indicated that the claimant's primary impairment at the time was substance abuse[.]").) But Dr. Sanchez merely speculated that Plaintiff's drug use could be the cause of her symptoms, rather than opining that Plaintiff's symptoms would necessarily improve with sobriety, as the ALJ suggested. (*Compare* AR 25 *with* AR 1688.) But again, as with the overstatement described in the previous paragraph, the ALJ did not expressly rely on Dr. Sanchez's opinion as a reason to discount Dr. Pratt's opinion, and instead provided his own reasons to discount Dr. Pratt's opinion. Thus, the ALJ's inaccurate representation of this portion of Dr. Sanchez's opinion did not necessarily prejudice his assessment of Dr. Pratt's opinion.

<u>Inconsistencies</u>

Plaintiff goes on to challenge the reasons the ALJ provided to discount Dr. Pratt's opinion, namely the inconsistencies identified by the ALJ. (AR 25-26.) The ALJ first found the marked and severe ratings identified by Dr. Pratt to be inconsistent with the mental status examination findings, which the ALJ characterized as showing "generally intact cognitive and communicative abilities[.]" (AR 25.) Dr. Pratt's mental status examination showed normal memory functioning, but "[o]verelaborate, vague, and circumstantial" speech, with "[d]ramatic mannerisms when speaking." (AR 1685-86.) Dr. Pratt found that Plaintiff's concentration, abstract thought, and insight/judgment were not within normal limits. (AR 1686.) In light of the many abnormalities Dr. Pratt noted during his examination, the Court finds that the ALJ's summary of Dr. Pratt's examination findings as showing "generally intact" cognition and communication is not entirely accurate.

The ALJ also found Dr. Pratt's opinion to be inconsistent with Plaintiff's "generally

normal" activities of daily living.  As support for this finding, the ALJ cited Dr. Pratt's evaluation, which mentions that Plaintiff reported "adequate [activities of daily living] currently in the areas of hygiene and grooming, cleaning and laundry, and cooking meals[.]"  (AR 1683.)  Dr. Pratt went on to note that Plaintiff reported problems with buying groceries and shopping, using public transportation, socializing, and managing money, however.  (*Id*.)  Plaintiff argues that the ALJ erred in focusing on the normal activities without acknowledging the areas of difficulty.  Dkt. 10 at 9.  The ALJ did acknowledge Plaintiff's report of difficulties with certain activities (AR 23, 25), but the Court agrees with Plaintiff that the ALJ's finding of "generally normal" activities does not account for the fact that Plaintiff did not complete these activities completely independently, as she was living in a psychiatric residential treatment center at the time of Dr. Pratt's examination, where she had the support of classes, a resident advisor, and assigned house chores.  (AR 62-67, 1683.)  Plaintiff explained at the administrative hearing that she had never lived independently, but had always either resided with her parents or in residential treatment facilities.  (AR 67.)  In this context, the ALJ's reference to Plaintiff's "generally normal" daily activities does not accurately reflect the entire context of the record.

Lastly, the ALJ found Dr. Pratt's opinion to be inconsistent with the record as a whole, which the ALJ interpreted as showing that Plaintiff's "more extreme presentations" were rare and linked to either drug use or medication non-compliance, and that once those issues were resolved, Plaintiff returned to "intact cognitive, social, and adaptive functioning at baseline[.]"  (AR 25-26 (citing AR 438-42, 620-716, 1663-80).)  Plaintiff points to evidence in the record that she contends shows that her symptoms persisted even when sober and medicated.  Dkt. 10 at 10-12.

The ALJ did point to sporadic findings of normal cognitive, social, and adaptive functioning (AR 21-25), but those findings do not represent the "record as a whole," as found by

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 9

the ALJ. The ALJ himself acknowledged psychiatric hospitalizations in October 2016, November 2017, December 2017, January 2018, and March 2018, and her providers recommended she access emergency psychiatric care in September 2017 as well. (AR 21-23.) Hospitalizations of this frequency cannot be reasonably characterized as "rare," during a period running from the alleged onset date in April 2016 through the most recent records from May 2018.

Furthermore, although the ALJ stated that Plaintiff had only "mild boundary issues" with her peers and was complying with the rules at her Park Place residential treatment facility in early 2018 (AR 23), she was ultimately discharged from that facility because "she was not participating in her treatment and she continued to break the rules." (AR 1744.) Although the ALJ cited Plaintiff's experience at Park Place as evidence of intact functioning (AR 23), the treatment notes dating to this period describe inappropriate socializing (AR 1740, 1742), drug use (AR 1735-36, 1741), and erratic behavior (AR 1728-29).

The ALJ also cited Plaintiff's functioning at an April 2018 intake appointment as evidence of her stabilized condition (AR 23-24), but failed to acknowledge that Plaintiff reported experiencing suicidal thoughts within 24 hours of the intake appointment and the provider found that a crisis plan was necessary to "divert self-harm." (AR 1667-68, 1679.) These treatment notes as a whole do not demonstrate that Plaintiff had "stabilized", as suggested by the ALJ. (AR 23-24.)

Given that the ALJ's reasons to discount Dr. Pratt's opinion are not based on a reasonable interpretation of the record, the ALJ erred in failing to provide legitimate reasons to discount Dr. Pratt's opinion. On remand, the ALJ should reconsider Dr. Pratt's opinion and any other part of the decision as necessary.

/ / /

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 10

## CONCLUSION

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this <u>30th</u> day of June, 2020.

Mary Alice Theiler
United States Magistrate Judge